**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

CAROLE BASKIN and                Case No.:  8:21-cv-02558-VMC-TGW
HOWARD BASKIN,

   Plaintiffs,

vs.

ROYAL GOODE PRODUCTIONS LLC and
NETFLIX, INC.,

   Defendants.

_____

## DEFENDANTS' MOTION TO DISMISS OR TRANSFER AND SUPPORTING MEMORANDUM OF LAW

Defendants Royal Goode Productions LLC ("RGP") and Netflix, Inc. ("Netflix") (collectively, "Defendants") seek relief under alternative theories involving the doctrine of *forum non conveniens*, 28 U.S.C. § 1404(a), and Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of this motion, Defendants state:

## INTRODUCTION AND BACKGROUND

From 2014 to 2019, RGP filmed Plaintiffs Carole and Howard Baskin (collectively, "Plaintiffs") in connection with footage that formed the basis of a seven-part docuseries, titled *Tiger King* ("*Tiger King 1*"). After the success of *Tiger King 1*, RGP produced a sequel, *Tiger King 2*, which Netflix released on November 17, 2021. Several weeks after Defendants' announcement of *Tiger King 2*, and before its release, Plaintiffs filed the instant action alleging a breach of contract claim and

seeking a declaratory judgment in connection with their appearance in *Tiger King 2*. (D.E. 1). Plaintiffs allege that they signed two appearance releases—on April 30, 2016 and April 3, 2018 ("the Earlier Releases")—that do not permit Defendants to reuse footage of them in a sequel. (D.E. 1 ¶ 23; D.E. 1-7 ¶¶ 15-17; D.E. 1-9 ¶¶ 12-14, 17). Plaintiffs fail to attach the subsequent appearance releases and location agreements[1] signed in 2019 (collectively, "the 2019 Agreements"), which supersede the Earlier Releases and include a forum-selection clause identifying New York as having exclusive jurisdiction. *See* (D.E. 24-1 at 5); (D.E. 24-2 at 4); (D.E. 24-4).

## ARGUMENT

Plaintiffs' Complaint warrants dismissal. The parties' agreements include a mandatory forum-selection clause designating New York as the proper forum. Plaintiffs are bound by the forum-selection clause. Defendants ask this Court to enforce the clause via dismissal or transfer of the case to the Southern District of New York in Manhattan pursuant to 28 U.S.C. § 1404(a).

Should the Court reach the merits of the claims asserted, dismissal is required for several independent reasons. First, Plaintiffs have not and cannot adequately plead compensable damages, an essential element of a breach of contract claim. Second, Defendants did not need to obtain new releases to use the footage of Plaintiffs in *Tiger King 2*. Third, Plaintiffs' request for declaratory relief serves no

---

[1] In their latest filing (D.E. 28 at 2 n.1) and at oral argument on Plaintiffs' Motion for Preliminary Injunction (D.E. 4), Plaintiffs withdrew their request to enjoin footage shot pursuant to the 2019 location agreement.

useful purpose and merely duplicates the breach of contract claim. Plaintiffs' Complaint fails to state a claim upon which relief can be granted and must be dismissed in its entirety.

## I. The Forum-Selection Clause Requires Transfer Under *Forum Non Conveniens*.

The construction of forum selection clauses is a matter of federal common law. *Cornett v. Carrithers*, 465 F. App'x 841, 842 (11th Cir. 2012). When assessing whether to enforce a forum-selection clause and transfer a case, a court must first determine (1) "whether the clause is valid," (2) "whether the claim at issue falls within the scope of the clause—by looking to the language of the clause itself," and (3) "whether the clause is mandatory or permissive." *Hindi v. BirdEye, Inc.*, No. 19-cv-61201, 2019 WL 4091425, at *3 (S.D. Fla. Aug. 29, 2019) (citing *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1340 (11th Cir. 2012); *Fla. Polk Cnty. v. Prison Health Servs. Inc.*, 170 F.3d 1081, 1083 (11th Cir. 1999)). If the court concludes an enforceable clause exists, it must then conduct a *forum non conveniens* analysis to decide whether the case should be transferred. *Hindi*, 2019 WL 4091425, at *6 (citing *Pappas v. Kerzner Int'l Bahamas Ltd.*, 585 F. App'x 962, 965 (11th Cir. 2014)).

The 2019 Agreements include forum-selection clauses that state the agreements "and any dispute relating thereto *shall be interpreted, enforced and governed . . . under the jurisdiction of the New York courts located within New York County*." [2] As

---

[2] This Court may consider the 2019 Agreements for the purposes of the Section 1404(a) analysis without converting this motion to one for summary judgment. *See Jiangsu Hongyuan Pharmaceutrical (footnote continued on next page)*

3

Magistrate Judge Wilson recognized in his November 19 Report and Recommendation (D.E. 31), the 2019 Agreements "govern" because they supersede the Earlier Releases. (D.E. 31 at 18-19). This is because the 2019 Agreements concern the same subject matter as the Earlier Releases: they grant RGP the right to use footage of Plaintiffs and release claims associated with such footage. *See, e.g., Hyuncheol Hwang v. Mirae Asset Sec. (USA), Inc.*, 165 A.D.3d 413, 413 (1st Dep't 2018) (it is well established that "a subsequent contract regarding the same matter will supersede the prior contract"); *Shehadeh v. Horizon Pharma USA, Inc.*, No. 20-cv-8107, 2021 WL 4176254, at *2 (S.D.N.Y. Sept. 14, 2021) (same); *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 215-16 (2d Cir. 2014) (forum selection clause appearing in the most recent, superseding contract holds sway); *accord Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 525-26 (2d Cir. 2011).

The forum selection clauses in the 2019 Agreements are valid, encompass Plaintiffs' claims, and are mandatory. Therefore, the clauses expressly require Plaintiffs to litigate their claims in New York, and the *forum non conveniens* analysis requires that this case be transferred.

---

*Co., Ltd. v. DI Glob. Logistics, Inc.*, 159 F. Supp. 3d 1316, 1322 (S.D. Fla. 2016) (noting court may consider matters outside the pleadings in ruling on a motion to dismiss based on *forum non conveniens*); *Jones v. Ponant USA LLC*, No. 19-cv-3041, 2020 WL 3172778, at *2 (S.D.N.Y. June 15, 2020) (because Rule 12(d) applies only to motions filed under Rule 12(b)(6) and 12(c), a court may consider additional evidence on a motion to dismiss for *forum non conveniens*).

**A. The forum-selection clause is enforceable.**

*1. The clause is valid.*

Forum-selection clauses are presumptively valid and should be enforced absent a clear showing that enforcement would be unfair or unreasonable. *Pappas*, 585 F. App'x at 965; *MoistTech Corp. v. Sensortech Sys., Inc.*, No. 8:15-cv-00434, 2015 WL 3952341, at *5 (M.D. Fla. June 26, 2015) (citing *Rucker v. Oasis Legal Finance, L.L.C.*, 632 F.3d 1231, 1236 (11th Cir. 2011)). This is because by enforcing the clause, the court is not seeking to limit a plaintiff's usual right to choose a forum but is enforcing the forum that the parties have already chosen. *P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003).

The party seeking to overcome the presumption of validity bears the heavy burden of showing that the clause's enforcement would be unreasonable because: (1) its formation was induced by fraud or overreaching, (2) the plaintiff would be deprived of his/her day in court because of inconvenience or unfairness, (3) the chosen law would deprive the plaintiff of a remedy, or (4) enforcement of the clause would contravene a strong public policy. *Xena Invs. Ltd. v. Magnum Fund Mgmt.*, 726 F.3d 1278, 1284-85 (11th Cir. 2013); *Liles v. Ginn-La W. End, Ltd.*, 631 F.3d 1242, 1245 (11th Cir. 2011).

Plaintiffs cannot sustain this heavy burden. There are no allegations—and none can be made—that the clause was entered into by fraud or overreaching. The

clause was not hidden or ambiguous. It appeared in legible type in the same font and size as the surrounding paragraphs of the one-page document.

Additionally, enforcement of the clause will not deprive Plaintiffs of their day in court, nor will the chosen law deprive them of a remedy. It will simply transfer the case to the parties' agreed-upon forum. Any potential difficulty Plaintiffs may allege in having to litigate in their selected forum cannot overcome the presumption of validity. *See, e.g.*, *Cleveland v. Kerzner Int'l Resorts, Inc.*, 657 F. App'x 924, 927 (11th Cir. 2016) ("generic averments of financial hardship and inconvenience" could not show that litigating in the forum would be so "gravely difficult and inconvenient" that plaintiffs would effectively be deprived of their day in court). This is especially true here because New York law applies regardless of forum. There is simply no unfairness in litigating a case applying New York law in a New York court.

Finally, there is no "strong" public policy that will be violated by requiring Plaintiffs to litigate in their agreed-upon locale. Florida courts routinely enforce forum-selection clauses, and public policy favors enforcement of contracts. *See, e.g.*, *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) ("enforcement of valid forum selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system). At bottom, Plaintiffs cannot satisfy their heavy burden to overcome the presumption of validity that accompanies forum-selection clauses.

### 2. The claims at issue are within the scope of the clause.

Because the clause is valid, this Court must next determine the scope of the clause and whether it covers the claims asserted in this action. *Landau v. Jaffa*, No. 18-60772, 2018 WL 4778426, at *4-5 (S.D. Fla. July 19, 2018). To do so, the Court must look to the plain language of the clause. *Oribe Hair Care, LLC v. Canales*, No. 17-cv-20148, 2017 WL 2059582, at *3 (S.D. Fla. May 15, 2017) (citing *Bahamas Sales Assoc.*, 701 F.3d at 1340). Forum-selection clauses are broadly construed to ensure resolution of all claims arising between the parties and to promote enforcement of those clauses consistent with the parties' intent.

Here, the forum-selection clause broadly encompasses the agreement "and any dispute relating thereto." (D.E. 24-1 at 5); (D.E. 24-2 at 4). Use of the term "relating to" in a forum-selection clause is interpreted to include *all* causes of action arising "directly or indirectly from the relationship evidenced by the contract." *Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 560 (11th Cir. 2016); *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330-31 (11th Cir. 2011) (suit asserting statutory rights under Title VII was within scope of clause applicable to "all claims or causes of actions relating to . . . the employment agreement"), *abrogated on other grounds by Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 63 (2013); *Smith v. Oasis Legal Finance, LLC*, No. 8:17-cv-2163, 2017 WL 4922271, at *3 (M.D. Fla. Oct. 31, 2017) (Covington, J.) (finding claims "relate to" the agreement and were within scope of forum-selection clause). So long as a party's claims arise out of the *relationship*, the

clause will be treated as within scope. *Graham v. Rapid Auto Loans, LLC*, No. 8:20-cv-2758, 2021 WL 62483, at *2 (M.D. Fla. Jan. 7, 2021) (Covington, J.); *Oribe Hair Care, LLC*, 2017 WL 2059582, at *4 ("regardless of how [plaintiff] would like to characterize its Complaint, the crux of this action is the extent to which [defendant] is permitted to use his own name, image and likeness in light of the agreements").

By signing the 2019 Agreements, Plaintiffs released *all* claims which could be asserted in connection with Defendants' use of their name, voice, actions, activities and likeness, including footage shot of them. *Id.* Plaintiffs' Complaint alleges Defendants exceeded the scope of the release and breached the agreements by using this same footage in *Tiger King 2*. (D.E. 1 ¶¶ 41-43, 46). Naturally, Plaintiffs' claims describe conduct that substantively relates to the 2019 Agreements. As a result, the clause applies to this action.

### 3. *The clause is mandatory.*

The Court must next decide whether the clause is mandatory or permissive. *Glob. Satellite Commc'n Co. v. Starmill U.K Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004). A permissive clause permits jurisdiction in a forum but does not prohibit litigation elsewhere. *Id.* "A mandatory clause, in contrast, dictates an exclusive forum for litigation under the contract." *Id.* The clause need not include the word "exclusive." *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1270 (S.D. Fla. 2004). Rather, a "hallmark of a mandatory clause is the use of the interpretative term 'shall,' which prescribes a requirement." *Connectus, LLC v. Ampush Media, Inc.*, No. 8:15-cv-2778,

2016 WL 761036 (M.D. Fla. Feb. 26, 2016) (Covington, J.). If a forum-selection

clause does not provide options, it is mandatory. *Arthrez, Inc. v. Orthogen*

*Aktiengesellschaft*, No. 2:05-cv-121, 2006 WL 8438756, at *3 (M.D. Fla. May 10,

2006) (Covington, J.).

> Here, the forum-selection clause states:

> This Release and any dispute relating thereto **shall be interpreted, enforced and governed** by the substantive laws of the State of New York, **under the jurisdiction of the New York courts located within New York County**.

(D.E. 24-1 at 5); (D.E. 24-2 at 4); (D.E. 24-4) (emphasis added). This clause does not

merely consent to jurisdiction in New York but requires it. The clause does not leave

open the possibility of any venue other than New York. Indeed, the term "shall," is

included in a single sentence and modifies *both* the choice of law and forum portion

of the sentence, rendering the clause mandatory. *Cf. Connectus*, 2016 WL 761036, at

*2 (finding clause which used the term "shall" to address choice of law sentence but

did not use term in the separate forum sentence was permissive because the sentence

addressing forum did not contain express intention to limit jurisdiction); *see also Glob.*

*Satellite Commc'n*, 378 F.3d at 1272 (use of term "shall" was most reasonably

interpreted to mandate venue in designated forum); *MoistTech Corp.*, 2015 WL

3952341, at *6 (same). Construing the clause as "permissive would render it

meaningless." *Fla. Polk Cnty.*, 170 F.3d at 1083 (finding clause vesting "jurisdiction

regarding the rights and obligations of either party under this Agreement and all

litigation resulting therefrom . . . in the . . . [circuit court of] Polk County, Florida" to

be mandatory because otherwise it would be rendered meaningless). Accordingly, the clause mandates all claims within the scope of the clause to be brought in New York, not the Middle District of Florida.

**B. The modified *forum non conveniens* analysis requires transfer.**

Because there is a valid, enforceable, and mandatory forum-selection clause, the court must next conduct a *forum non conveniens* analysis to determine whether transfer is appropriate. *Hindi*, 2019 WL 4091425, at *2. Ordinarily, the doctrine requires the movant to show: (1) an available adequate alternative forum, (2) public and private factors favor transfer, and (3) the plaintiff could reinstate suit in the alternative forum without undue inconvenience or prejudice. *Schrenkel v. Lendus, LLC*, No. 2:18-cv-382, 2018 WL 2:18-cv-382, at *8 (M.D. Fla. Oct. 30, 2018).

This traditional analysis changes however, when, as here, a contract includes a valid forum-selection clause representing "the parties' agreement as to the most proper forum." *Atl. Marine Constr.*, 571 U.S. at 63. This means that Plaintiffs' choice of forum has no weight and the "private interest factors [which govern the traditional analysis] weigh entirely in favor of the preselected forum." *Pappas*, 585 F. App'x at 967. Under this modified and restrictive *forum non conveniens* analysis, the burden shifts to the non-movant to show that the public interest factors "overwhelmingly disfavor" transfer to the agreed-upon forum.[3] *See Atl. Marine Constr. Co.*, 571 U.S. at

---

[3] The alternative adequate forum factor is still considered under the modified analysis, however, there can be no dispute that the Southern District of New York is an available, adequate alternative forum. The Southern District of New York can assert jurisdiction over the litigation and provides an

*(footnote continued on next page)*

66; *see also Ideal Protein of Am., Inc. v. Alllife Consulting, Inc.*, No. 8:19-cv-654, 2019 WL 2358832, at *6 (M.D. Fla. June 4, 2019) (Covington, J.). Those public interest factors include "the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, and the interest in having the trial of a diversity case in a forum that is at home with the law." *Pappas*, 585 F. App'x at 967.

Because those factors "will rarely defeat" a transfer motion, "the practical result is that forum-selection clauses should control except in unusual cases." *See Atl. Marine Constr. Co.*, 571 U.S. at 62 ("when parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."); *St. Francis Holdings v. Cynosure, Inc.*, No. 8:20-cv-1101, 2020 WL 9601509, at *2 (M.D. Fla. Sept. 23, 2020); *Smith*, 2017 WL 4922271, *3 ("an enforceable forum-selection clause carries near-determinative weight in [*forum non conveniens*] analysis."); *Hindi*, 2019 WL 409125, at *2 (existence of such forum-selection clause "is essentially dispositive in the § 1404(a) or *forum non conveniens* analysis.").

This is not an exceptional case. Plaintiffs agreed to designate their venue in advance. Plaintiffs cannot now argue that the forum they agreed to is unfair. And the public interest considerations all point to New York. The parties specifically agreed that New York law would control, and the public has an interest in having these

---

adequate remedy at law, especially given the application of New York law to these claims. *See, e.g.*, *Leon v. Millon Air, Inc.*, 251 F.3 1305, 1311 (11th Cir. 2001).

cases litigated in the "forum that is at home with the law that must govern the action." *See, e.g.*, *Rescoma, LLC v. Las Olas Co., Inc.*, No., 2017 WL4232568, at *5 (S.D. Fla. Sept. 22, 2017). Indeed, it is reasonable to assume judges sitting in New York will be more current and knowledgeable about nuances in that state's law. There is no reason to burden this Court with application of another state's law, particularly when the Middle District has been recognized as "one of the most congested Federal Court dockets in the nation." *MoistTech Corp.*, 2015 WL 3952341, at *9; *see also Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd.*, 722 F. App'x 870, 885 (11th Cir. 2018) (recognizing District as "one of the busiest districts in the United States."). Finally, judicial economy weighs heavily in favor transfer because the entire action falls within the scope of the clause.

Plaintiffs cannot meet their "heavy burden" of proving the public interest factors "overwhelmingly disfavor" the forum they chose to litigate their claims. *Messmer v. Thor Motor Coach, Inc.*, No. 3:16-cv-1510, 2017 WL 933138, *4 (M.D. Fla. Feb. 28, 2017) (transferring case to Northern District of Indiana per forum-selection clause where plaintiff failed to show that it was "an unusual case in which [public-interest] factors weigh so heavily against transfer so as to preclude it"). There is no reason to ignore the parties' pre-selected forum. The Court should enforce the clause that Plaintiffs agreed to and transfer the case under 28 U.S.C. § 1404(a).

II.     **Alternatively, Dismissal of Plaintiffs' Breach of Contract Claim is Required for Failure to State a Claim.**

To state a claim for breach of contract under New York law, a plaintiff must prove (1) the existence of a contract, (2) performance by the plaintiff, (3) breach of the contract by defendant, and (4) resulting damages. *RCN Telecom Svcs., Inc. v. 202 Centre Street Realty LLC*, 156 F. App'x 349, 350-51 (2d Cir. 2005).

Plaintiffs' breach of contract claim fails for several reasons. Plaintiffs cannot and do not allege compensable damages, a critical element to any contract claim. Moreover, the appearance releases from Plaintiffs were not required, thus inclusion of the footage in *Tiger King 2* does not breach the contract.

### A. Plaintiffs have not alleged compensable damage.

Damages are "an essential element of a breach of contract claim." *Steadman v. Zappin*, No. 150591/2017, 2018 WL 1316789, at *3 (N.Y. Sup. Ct. 2018). Indeed, without a clear showing of damages, there can be no claim for breach of contract. *Id.* Dismissal is therefore required where, as here, Plaintiffs have not alleged and cannot allege any legally compensable damages. First, the Complaint speculates that Plaintiffs "will" be harmed, but such speculation does not replace the required allegation of actual harm. Second, the type of harm Plaintiffs speculate about— reputational injury—is not cognizable under a breach of contract theory.

#### 1. *Plaintiffs have not alleged an actual injury.*

Plaintiffs do not plead that they have suffered any injury at all. The Complaint speculates that Plaintiffs *will* be harmed if the use of the footage in *Tiger King 2*

resembles that of *Tiger King 1*. *See* (D.E. 1 ¶ 43) (alleging the use of the footage in *Tiger King 2* "*will* cause the Baskins irreparable injury for which the Baskins have no adequate remedy at law") (emphasis added); *see also* ¶ 47 (alleging "there is a substantial likelihood that the Baskins *will suffer injury in the future*") (emphasis added). The Complaint does not allege what type of harm *may* occur. And because the Complaint lacks any allegation that Plaintiffs have suffered actual harm, it likewise lacks any allegation that Defendants *caused* harm. *Steadman*, 2018 WL 1316789, at *3; *Gordon v. Dino De Laurentiis Corp.*, 141 A.D.2d 435, 436 (1st Dep't 1988) (dismissing complaint that did not establish "how the defendant's alleged breach caused plaintiffs any injury"). The Complaint must be dismissed on this basis alone.

### 2. *Reputational injury is not recoverable under breach of contract.*

Although the Complaint itself does not specify what type of harm *may* result, Plaintiffs' accompanying injunction motion identifies damages to their reputation and emotional harm that *could* flow from Defendants' publication of the footage in *Tiger King 2*. *See* (D.E. 1-4 at 22-23) (discussing vitriol allegedly occasioned  by *Tiger King 1* and alleging use of the footage in *Tiger King 2* will harm their reputations). Even if Plaintiffs had alleged them in the Complaint, these strained claims of possible reputational injuries are not recoverable in an action for breach of contract.

It is well settled under New York law that a plaintiff cannot recover damages for loss of reputation or emotional and mental distress in a breach of contract action.

*D'Andrea v. Rafla-Demetrious*, 3 F. Supp. 2d 239, 247 (E.D.N.Y. 1996) ("plaintiff

cannot recover any damages for emotional and mental distress, damage to his

reputation, or punitive damages under a breach of contract claim), *aff'd*, 146 F.3d 63

(2d Cir. 1998); *AmTrust N. Am., Inc. v. KF&B, Inc.*, No. 17-cv-5340, 2020 WL

5503479, at *1 (S.D.N.Y. Sept. 11, 2020) ("a plaintiff cannot recover for damage to

reputation in a breach of contract action under New York law"); *Premier Fla. Auto*

*Sales & Leasing, LLC v. Mercedes-Benz of Massapequa, LLC*, No. 10-cv-4428, 2013 WL

2177785, at *5 (E.D.N.Y. May 20, 2013) (reputational damages "are not recoverable

in a breach of contract action under New York law."); *Rather v. CBS Corp.*, 68

A.D.3d 49, 55 (1st Dep't 2009) (dismissing breach of contract claim where damages

alleged were lost business opportunities premised on reputational injury); *MacArthur*

*Const. Corp. v. Coleman*, 91 A.D.2d 906, 906 (1st Dep't 1983) (dismissing breach of

contract claim seeking damages for loss of reputation because such claim is "not

actionable"); *Fleming v. All State Ins. Co.*, 106 A.D.2d 426, 426 (2d Dep't 1984) ("it is

beyond cavil that a plaintiff cannot, in an action for breach of contract, recover

damages for emotional distress"), *aff'd*, 66 N.Y.2d 838 (1985). Instead, damages for

reputation in a breach of contract claim are permitted only in exceptional cases

where a plaintiff alleges and proves "specific business opportunities lost as a result of

its diminished reputation." *Premier Fla. Auto Sales & Leasing*, 2013 WL 2177785, at

*6.

15

Plaintiffs do not allege anywhere in the Complaint that they lost a specific business opportunity because of the alleged harm resulting from the breach. *See* (D.E. 1). They have not alleged this is an exceptional case warranting departure from the general rule that precludes any type of reputational injury. Thus, they have not adequately alleged damages (even if they had included in their Complaint protestations about reputational harm found elsewhere in their filings).

The limitations on contract damages are especially relevant here, where the First Amendment independently bars Plaintiffs from seeking "publication damages" by asserting a non-publication cause of action. Any cause of action seeking damages for reputational or emotional injury sustained because of publication, no matter how labeled, is subject to all the constitutional burdens and defenses that govern claims for defamation, including the well-established protection that a public figure must show a false statement of fact was published with actual malice. *Hustler Mag v. Falwell*, 485 U.S. 46, 52 (1988). *Falwell* stands for the now settled proposition that courts may not permit plaintiffs, through creative pleading, to invoke other causes of action as a vehicle to make "an end-run around First Amendment strictures." *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 522 (4th Cir. 1999) (plaintiff may not recover for damages to reputation in non-defamation claims); *see also Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 633 (N.D. Cal. 2019) (holding that the First Amendment barred plaintiffs from recovering reputation damages arising from publication of videos); *Smithfield Foods, Inc. v. United Food and Com. Workers Int'l Union*, 585 F. Supp. 2d 815, 817, 824 (E.D. Va. 2008)

16

(finding lost profits resulting from public's reaction to campaign were reputational in nature, requiring plaintiff to satisfy defamation standards). Whether under New York law or federal constitutional law, Plaintiffs' failure to allege any recoverable loss under a breach of contract claim requires dismissal.

### B. Plaintiffs' claim is based on an incorrect assumption that Defendants were required to obtain releases.

Even if Plaintiffs had adequately pleaded damages, Plaintiffs simply cannot allege any contractual breach. The Complaint asserts that the Earlier Releases limited Defendants' use of the footage filmed of Plaintiffs and Big Cat Rescue, and that the alleged "unauthorized use" of the footage violates the releases. (D.E. 1 ¶¶ 39, 42-43). The Earlier Releases, however, are permissive. They do not expressly prohibit Defendants from using the footage in any manner.

To be sure, Plaintiffs' "authorization" for use of their footage was never necessary. Under both Florida and New York law consent is unnecessary so long as a person's name or likeness is used for a non-commercial purpose. *See, e.g., Loft v. Fuller*, 408 So. 2d 619, 621 (Fla. 4th DCA 1981) (requiring consent of people portrayed in film "would have an unconstitutional 'chilling' effect upon the First Amendment"); *Weil v. Johnson*, No. 119431/02, 2002 WL 31972157, at *4 (N.Y. Sup. Ct. Sept. 27, 2002) (finding releases were not required to portray subjects of a documentary); *Man v. Warner Bros., Inc.*, 317 F. Supp. 50, 52 (S.D.N.Y. 1970) (consent is not needed to show plaintiff's name and likeness in film). And use of a person's name or likeness in a docuseries does not qualify as a commercial purpose.

*See, e.g., Joseph Burstyn v. Wilson*, 343 U.S. 495, 501-02 (1952) (noting motion pictures, like books, are protected, expressive works despite significant revenue generated); *Tyne v. Time Warner Entm't Co., L.P.*, 204 F. Supp. 2d 1338, 1342 (M.D. Fla. 2002) (film and accompanying promotional aspects of film did not constitute a commercial purpose); *Tyne v. Time Warner Entm't Co., L.P.*, 901 So. 2d 802, 810 (Fla. 2005) (publications, including motion pictures, do not qualify as a commercial purpose as used in Florida misappropriation statute).

Because most participants have little to no understanding that they do not have the right to control the use of their image or likeness in a First Amendment-protected work, like a docuseries, appearance releases serve the important function of ensuring the participants and producers are on the same page. Indeed, while they are not required, procuring appearance releases is a common practice among filmmakers, especially for those that operate in multiple states. This is because "the potential for lawsuits is tremendous" and releases are "intended to serve as a level of protection to the producers and owners" of the film or docuseries. *Klapper v. Graziano*, 970 N.Y.S.2d 355, 359 (N.Y. Sup. Ct. 2013); *see also* Robert C. Sanchez, *Unauthorized Appropriation of an Individual's Name or Likeness*, Fla. Bar J. July/August 1998, at 57 (explaining that the "easiest way" to avoid problems with image misappropriation is simply to "require all agencies and photographers to provide copies of necessary model releases and consents"). In other words, in exchange for "the chance for publicity," appearance releases merely give advance express consent to relieve a potential defendant of potential claims that a filmmaker had no right to

tell the story about a participant. *Coates v. Newhall Land & Farming*, 191 Cal. App. 3d 1, 7 (1987); *Klapper*, 970 N.Y.S.2d at 361 (noting the releasor recognizes "the possibility that the outcome may not be [] as expected.").

Here, the Earlier Releases did just that. Plaintiffs gave express consent to use of their name and likeness and, in turn, relieved Defendants of potential claims. Critically, there is no provision in the Earlier Releases that *precludes* any use of the footage. Had Plaintiffs intended to restrict use of the footage, they could have done so. *See, e.g.*, *Burnett v. Warner Bros. Pictures, Inc.*, 113 A.D.2d 710, 712-13 (1st Dep't 1985). In *Burnett*, the plaintiffs had assigned all of their rights in a play later adapted into a movie and a subsequent spinoff television series. *Id.* The plaintiffs argued the assignment did not include sequel rights, but the court affirmed dismissal of the complaint concluding "had the plaintiff intended to retain certain rights, specific clauses to that effect should have been included in the agreement." *Id.*; *see also Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 172 (N.Y. 2002) (finding broad grant of rights "includes the right to use the work in any manner . . . unless those rights are specifically limited by the terms of the contract"). If Plaintiffs are correct that the Earlier Releases do not apply to *Tiger King 2*, it simply means that Defendants have not been relieved of potential claims. It does not, however, mean that Defendants' use of the footage in *Tiger King 2* was wrongful. That Plaintiffs did not condition their interviews on the Earlier Releases underscores this reality. Indeed, Plaintiffs allege that RGP began filming before they entered into appearance releases. (D.E. 1 ¶¶22-23).

In sum, consent is not necessary to allow someone to do something she or he already has the right to do. Because Defendants had the right to film and portray Plaintiffs for any non-commercial purpose, and the Earlier Releases placed no restrictions on that right, Plaintiffs have no potential cause of action against Defendants based on their appearance in *Tiger King 2*.

## III.   Plaintiffs' Declaratory Judgment Claim Should Also be Dismissed.

Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), Plaintiffs seek declaratory relief from the Court regarding the interpretation of the Earlier Releases. (D.E. 1 at 19). A declaratory judgment request under the DJA remains discretionary with the court, and is not the right of a litigant as a matter of course. *Amusement Indus., Inc v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (DJA "confers a discretion on the courts rather than an absolute right upon the litigant."). In deciding whether to entertain a declaratory judgment request, courts consider whether the judgment will serve a useful purpose in clarifying or settling legal issues, as well as whether there is a better or more effective remedy available. *Amusement Indus.*, 693 F. Supp. 2d at 311. In this case, Plaintiffs' declaratory judgment request does not satisfy this criteria.

The request serves no useful purpose because the answers Plaintiffs seek merely duplicate the issues relevant to the breach of contract claim. *Compare* (D.E. 1 ¶¶ 45-47 *and* ¶¶ 39-43). Although the existence of another adequate remedy does not preclude a judgment for declaratory relief, "the fact that a lawsuit has been filed that will settle the issues for which declaratory judgment is sought suggests that the

declaratory judgment will serve 'no useful purpose.'" *Amusement Indus.*, 693 F. Supp. 2d at 311; *see also Intellectual Capital Partner v. Inst. Credit Partners LLC*, No. 08-cv-10580, 2009 WL 1974392, at *6 (S.D.N.Y. July 8, 2009) ("declaratory relief would serve no useful purpose as the legal issues will be resolved by litigation of the breach of contract claim"). Indeed, because the Court will analyze the parties' rights and obligations under the Earlier Releases in connection with Plaintiffs' breach of contract claim, "a declaratory judgment on the same issues would be superflous." *Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Enmt't Corp.*, No. 08-cv-1558, 2009 WL 577916, at *11 (S.D.N.Y. Mar. 2, 2009); *Intellectual Capital Partner*, 2009 WL 1974392, at *6 (any uncertainty over the scope and enforceability of contract "will be dispelled in litigation of the breach of contract claim."). For this same reason there is a better or more effective remedy than a declaratory judgment: resolution of the contract claim. *Amusement Indus., Inc.*, 693 F. Supp. 2d at 312; *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542 (S.D.N.Y. 2014). The declaratory relief sought is redundant, does not serve a useful purpose and does not provide the best or most effective remedy. The relief is unnecessary and should not be entertained.

## CONCLUSION

This action belongs in the forum the parties expressly agreed to, New York. As a result, the case should be dismissed or transferred to the Southern District of New York under Section 1404(a). Alternatively, should the Court reach the merits of Plaintiffs' claims, dismissal is required. Plaintiffs have not alleged any compensable

damages, and Defendants were not required to obtain new releases to use the footage of Plaintiffs in *Tiger King 2*. Finally, Plaintiffs' declaratory relief claim is redundant and serves no useful purpose. The Complaint should be dismissed.

## **LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to Local Rule 3.01(g), counsel for Defendants certifies that she spoke with counsel for Plaintiffs and that Plaintiffs oppose the relief requested herein.

Respectfully submitted,

*/s/ Rachel E. Fugate*
Rachel E. Fugate
Florida Bar No. 0144029
Deanna K. Shullman
Florida Bar No. 514462
Giselle M. Girones
Florida Bar No. 124373
Shullman Fugate PLLC
100 South Ashley Drive, Suite 600
Tampa, FL  33602
Telephone: (813) 935-5098
rfugate@shullmanfugate.com
dshullman@shullmanfugate.com
ggirones@shullmanfugate.com

*Attorneys for Defendants*

Of Counsel:

Russell A. Smith
SmithDehn LLP
654 San Juan Avenue,
Los Angeles, CA 90291
(917) 239-5047
rsmith@smithdehn.com

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on November 24, 2021, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system.

*/s/ Rachel E. Fugate*
Rachel E. Fugate
